LeBLANC, Judge.
This is an appeal from a district court judgment upholding an administrative hearing officer’s determination that a lease between Republic Joint Venture, plaintiff-appellant, and the State was properly terminated. We affirm.
The dispute in this case centers on whether the State properly utilized the annual appropriation dependency clause contained in the lease agreement for office space for the Department of Civil Service in the Republic Tower building. Republic Joint Venture (RJV) argues the State failed to make a good faith effort to appropriate funds for the lease and that the State failed to prove that funds were unavailable.
The subject lease was for a period of five years, commencing August 1, 1981, and ending July 31, 1986, with an option to renew for three years. The State exercised its option to renew in March, 1986, extending the lease until July 31, 1989. However, in July, 1988, the Director of the Department of Civil Service notified RJV that “public funding is inadequate to meet the rental obligations of the lease” and terminated the lease effective September 30, 1988, “in accordance with paragraph 26 of the subject lease.”
Paragraph 26 stated:
In the event that public funding by either Federal or State governing is inadequate to meet the rental obligations of this lease, Lessee may terminate the lease upon sixty (60) days written notice.[1]
The State asserts that funds were unavailable due to the financial crisis and potential financial collapse of state government experienced in late 1987 and 1988 and that, in terminating the lease, the state acted in good faith. While recognizing that during this time massive budget cuts and other cost saving steps were taken in an attempt to salvage the State’s fiscal condition, RJV argues the State failed to make a good faith effort to appropriate funds for the Republic Tower lease.
Testimony presented by the State at the hearing established that in late 1987 then Governor-Elect Roemer, in an attempt to put the state on a sound financial footing, began to identify and recommend budget cuts. The Division of Administration, along with Mr. Brian Kendrick, then Commissioner of Administration, and Mr. Roger Magendie, Director of Facility Planning, proposed, as one costs-saving measure, identifying unused or underutilized state-owned space for agencies currently leasing space. The cost of leased space for the Department of Civil Service was targeted as a possible savings and moving the department was discussed. Meetings took *1131 place between Mr. Kendrick, Mr. Magendie, and other budget officials.
The decision to move the Department of Civil Service to state-owned property was made and Mr. Ralph Pearlman, then State Budget Director, instructed Mr. Robert Harper, State Budget Manager, to eliminate a portion of the lease costs and to add moving expenses to the submitted Civil Service budget. This was done and the revised budget, with funds for lease payments for July, August and September, 1988, was submitted to, approved and appropriated by the legislature.
Testimony before the hearing officer by numerous current and former state employees and officials clearly establishes that the legislature was faced with a fiscal crisis and that massive budget cuts were viewed as part of the solution to the problem. Reduction of costs by consolidating offices and agencies, and by utilizing state-owned property was believed to be appropriate and necessary. The legislature and the State of Louisiana acted in good faith when, after recognizing the financial crisis and adopting numerous cost savings measures, they terminated the lease for office space with RJV. Because the funds were not appropriated, the lease was terminated and the lessee gave the required written notice of termination to RJV. See, Leiter v. U.S., 271 U.S. 204, 46 S.Ct. 477, 70 L.Ed. 906 (1926); Goodyear Tire and Rubber Company v. U.S., 276 U.S. 287, 48 S.Ct. 306, 72 L.Ed. 575 (1928).
The hearing officer determined, and the trial court agreed, that the lack of appropriated funds and the termination of the lease because of inadequate appropriations were in good faith. These findings were well-founded and based on the evidence and testimony presented. There was no manifest error in the findings of the hearing officer nor were the conclusions and exercises of agency discretion arbitrary or capricious, Bizette v. State Dept. of Public Safety, 583 So.2d 875 (La.App. 1st Cir.1991). RJV’s claim that the state failed to make a good faith effort to appropriate funds is without merit.
RJV also argues the State failed to prove that funds were unavailable, and that Mr. Kendrick and Mr. Magendie decided that the State could no longer afford this lease.
The legislature is the source of funding for supplies or services for agencies of the state government. La. Const, article VII, § 6. The Louisiana Procurement Code governs procurement of supplies and services by the State, La.R.S. 39:1551 et seq., and makes multi-year contracts subject to continued appropriations. La.R.S. 39:1615 C. The Division of Administration and the Commissioner of Administration are statutorily required to advise and assist the governor and the legislature in budget matters. La.R.S. 39:6. Their recommendation to the legislature was to move the department. This recommendation was based on the need to reduce state spending and restore fiscal soundness to the state government.
The legislature approved the budget which contained a notation that the department would move to state-owned property and failed to include funds for lease payments. The funds were not appropriated and were not available from the legislature. The lease was terminated according to the provisions and terms of the lease. This claim is without merit.
Costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.

. This provision complies with Article III, § 16 of the Louisiana Constitution and La.R.S. 39:1615. Article III, § 16 provides that an appropriation can be for no longer than one year. La.R.S. 39:1615 C. provides that "when funds are not appropriated to support continuation of performance in a subsequent year of a multi-term contract, the contract for such subsequent year shall be terminated. When a contract is terminated under these conditions, no additional funds shall be paid to the contractor as a result of such action.”