**PUBLIC WATER SUPPLY DIST. NO. 6 OF JACKSON COUNTY, MISSOURI, v. UNITED STATES.**

No. 2833.

District Court, W. D. Missouri, W. D.

May 21, 1946.

Perry M. Cortner, of Kansas City, Mo., for plaintiff.

Earl A. Grimes, Asst. U. S. Atty., of Kansas City, Mo., for defendant.

RIDGE, District Judge.

The right of action, here asserted against the United States, arises from the following state of facts: Troost Avenue, south from the city limits of Kansas City, Missouri to Bannister Road, is a highway belonging to the State of Missouri. Pursuant to the provisions of the Federal Highway Act, T: 23 U.S.C.A. § 1 et seq., and the Defense Highway Act of 1941, T. 23 U.S.C.A. ch. 3 § 101 et seq., the Federal Works Administrator proceeded to have the Highway Commission of Missouri widen and extend said road as an "access road" to a war plant engaged in the production of material for the U. S. Navy. To facilitate the completion of said project the Administrator, under sec. 14 of the Defense Highway Act of 1941, T. 23 U.S.C.A. § 114, directed condemnation proceedings to be instituted to obtain immediate title to a 10 foot strip of land on each side of the then-existing roadway of Troost Avenue, and for the extension of said road to the terminus required. Said condemnation suit was instituted on January 9, 1943, and, in accordance with the laws of the United States, the Government took immediate possession of the land so condemned. On April 12, 1943, the Acting Commissioner of Public Roads entered into "a project agreement" with the Highway Commission of Missouri, under sec. 6 of Defense Highway Act of 1941, T. 23 U.S.C.A. § 106, whereby the United States subsidized the cost of widening, extending, paving and improving said road within the limits above referred to. (There must have been previous negotiations between the Acting Commissioner of Public Roads and the Highway Commission of Missouri, concerning said project. However the record is silent in reference thereto.)

After defendant took possession of the real estate condemned, but before the above project agreement was consummated, the State Highway Commission of Missouri, pursuant to applicable laws of Missouri, awarded certain contracts for the doing of the work incident to said project. One of the contracts so awarded was to the Perry-McGlone Construction Company to do the grading, construction of culverts and paving of Troost Avenue from the southerly city limits of Kansas City to a bridge that was to span 85th Street. Another of said contracts was awarded to the George Bennett Construction Company for the grading and construction of culverts, together with other incidental work on the project in question, from 85th Street southerly to Bannister Road. The State Highway Commission of Missouri prepared all specifications and requirements and the plan for the construction of said project, subject to the approval of the Commissioner of Public Roads.

Plaintiff, a non-profit corporation organized pursuant to the provisions of Art. 12, ch. 79, R.S.Mo.1939, Mo.R.S.A. § 12620 et seq., furnishes water to the inhabitants of a certain district in Jackson County, Missouri. Pursuant to sec. 12635, R.S.Mo.1939, Mo.R.S.A., plaintiff, on June 30, 1940, was granted permission by the County Court of Jackson County, Missouri, to construct, operate and maintain its water pipelines in certain of the highways of said County for the above purpose. (Certain highways in the State of Missouri are under the jurisdiction of the County Courts of said state.) Pursuant to the permission so granted to it, plaintiff laid a portion of its water pipelines under the surface of Troost Avenue, south from the city limits of Kansas City, Missouri, to 85th Street, and projected said pipelines east and west of Troost Avenue in 85th Street, for some distance. In performing the work incident to the above project the Perry-McGlone Construction Company covered the water pipeline of plaintiff, laid in Troost Avenue, with a large quantity of earth, which necessitated the relaying, by plaintiff, of a new pipeline along Troost Avenue for a distance of, approximately, 600 feet, measuring north from 85th Street. At the intersection of Troost Avenue and 85th Street plaintiff's pipeline was broken by the George Bennett Construction Company, while excavating that part of said project under its contract with the State of Missouri. Plaintiff seeks to recover in this action the expense in-

curred by it in removing, relocating and repairing its said pipeline, amounting to $3,998.68.

Defendant did not know of the location of said water pipeline in Troost Avenue before it was broken. Because of that fact plaintiff was not made a party in the condemnation proceedings above referred to when that suit was first instituted. After said pipeline was broken an amended petition was filed in said condemnation suit making plaintiff a party thereto. Plaintiff entered its appearance and filed a claim premised upon the expense incurred by it in relaying, relocating and repairing its pipeline. In the claim so filed plaintiff stated: "It claims no right, title, lien or interest of any character in and to the lands as more fully described in the first amended petition." The Government did not claim the right of eminent domain so far as plaintiff's pipeline was concerned in said condemnation proceeding, and does not now claim any right or interest therein. In the course of said condemnation proceeding the Court, in which said cause was pending, entered judgment in favor of the defendants whose lands were actually taken, but denied the claim of plaintiff, "without prejudice to the bringing of an independent suit against the United States" because plaintiff's claim therein made was not "compensable in a condemnation proceeding." Plaintiff here prosecutes that independent action.

Plaintiff premises its right of action against the United States upon the following proposition: The covering of plaintiff's pipeline with a large quantity of earth and the breaking of said pipeline, as above stated, was tantamount to a "taking" of the property of plaintiff by the United States; therefore an implied contract to pay the cost thereof exists between the parties. In consequence of that assertion plaintiff premises the jurisdiction of this Court over this action on the Tucker Act, 28 U.S.C.A. § 41(20). Plaintiff's theory stated in another way is that the contractors who performed the work of constructing the project in question had a contract with the United States Government and, in performing said work in conformity with such contract, damage to plaintiff's property directly resulted. Yearsley v. W. A. Ross Con-struction Co. 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554. From a consideration of the United States Government's interest in the project in question it is manifest that no damage was caused to plaintiff's property by any contractor having a contract with the United States to do the work in question.

Under the Defense Highway Act of 1941, T. 23 U.S.C.A. ch. 3, § 101 et seq., Congress made provision for the establishment of a "strategic network of highways," in aid of the National Defense. In authorizing the Commissioner of Public Roads "to provide for the construction, maintenance and improvement" of such roads, Congress in said Act, among other things, followed the general pattern established in the Act of Congress dated July 11, 1916, 39 Stat. 355, entitled "An Act to provide that the United States shall aid the states in the construction of rural post roads, and for other purposes," (and carried into the Federal Highway Act of 1921,) of granting subsidies to the states to defray the cost of such roads and leaving, to the states, the actual work of constructing the same where agreeable. During the continuance of the emergency recognized in the Defense Highway Act of 1941, the Commissioner of Public Roads, among other things, was authorized to enter into contracts with the several states for that purpose, c.f. T. 23 U.S.C.A. § 106; to advance funds to the states when "necessary for the expeditious completion of projects undertaken," sec. 107, and to expedite the acquisition of rights-of-way in accordance with the laws of the United States by agreement with the State Highway Department of any state if "the highway department of any State [was] unable to obtain possession and the right to enter upon and use the required rights-of-way * * * with sufficient promptness." When an interest in lands was so acquired the Federal Works Administrator was required to convey such interest to the Highway Department of the state in which the road was located. c.f. sec. 114, T. 23 U.S.C.A.

Pursuant to the authority so contained in the Defense Highway Act of 1941 Troost Avenue, as above stated, was designated as an "access road" to the site of a defense industry located outside Kansas City, Mis-

souri. To facilitate acquiring the right-of-way so as to improve and widen said road, the Federal Works Administrator (undoubtedly by agreement with the State Highway Commission of Missouri, although such agreement is not shown in the instant record and it is not necessary to a decision herein that it be shown) caused the institution of condemnation proceedings whereby a 10 foot strip of land, on each side of said road, was acquired. To provide for the grading, paving and improvement of said "access road" the Commissioner of Public Roads entered into a contract (designated Project Agreement herein) with the Highway Commission of Missouri, whereby said Highway Commission agreed to "construct or cause to be constructed to final completion said project, in strict compliance with" the "plans and specifications" prepared by said Highway Department and to have said work done under the "direct supervision" of said Highway Department subject to "inspection and approval" by the Federal Works Administrator or his agents.

The Defense Highway Act of 1941, supra, and the contract so entered into between the Commissioner of Public Roads and the Highway Commission of Missouri, clearly establishes the fact that the work of widening and extending Troost Avenue, as above referred to, was an undertaking of the Highway Commission of Missouri, and not an undertaking of the United States Government. Under the scheme by which said road was widened and extended the evidence establishes that all contracts entered into with the contractors, who performed the work of constructing said project, were made with the Highway Commission of Missouri and not the United States Government. There is no evidence in this record from which an inference can be made that any contractor, doing work on the project in question, had a contract with the United States Government. The only contract that the United States Government had, concerning said matter, was its contract with the Highway Commission of Missouri. Under that contract and the Acts of Congress, above referred to, the United States Government is shown to be in the position of directly contracting with the Highway

Commission of Missouri, whereby the latter undertook to construct a road which would be a part of the road system of the State of Missouri, to a defense plant of the United States Government, if the United States Government would subsidize the cost of making such improvement. In so contracting the United States Government did not become primarily liable to any person for any damage caused by the work of constructing said road. The only obligation of the United States, under said contract, was to furnish the funds by which the Highway Commission of Missouri could pay the cost of widening and extending Troost Avenue. When the above salient facts are considered in conjunction with the Acts of Congress under which the Commissioner of Public Roads was acting when he declared said road necessary as an "access road," and when said Commissioner executed the project agreement, it is manifest that there is no privity of contract between the United States Government and any contractor, who performed work in the construction of the project in question, that would make the United States Government liable to action on the part of the plaintiff for the damage which it here claims. To sustain its right to sue the United States Government, plaintiff must rest its action upon a contract, expressed or implied in fact—not in law. Goodyear Tire & Rubber Co. v. United States, 276 U.S. 287, 48 S.Ct. 306, 72 L.Ed. 575. To do that plaintiff has the burden to establish some privity of contract between the contractors who, it claims, caused damage to its pipeline and the United States. Privity of contract denotes mutual or successive relationship to the same right of property or subject-matter. Ocean Accident & Guarantee Corporation v. Southwestern Bell Tel. Co., 100 F.2d 441, 122 A.L.R. 133. There is no mutual or successive relationship between the United States Government and the contractors who performed the work of constructing the project in question. The Highway Commission of Missouri is the only party who had any contractual relationship with said contractors. The project agreement, above referred to, did not, in any respect, assume any obligation to said contractors or create any liability on the United States Govern-

ment for any work performed by them in conformity with their contracts with the Highway Commission of Missouri. In order to hold the United States Government liable to plaintiff under the facts of this case, it must appear that plaintiff's property was taken by some person authorized so to do by Congress. United States v. North American Transportation & Trading Co., 253 U.S. 330, 40 S.Ct. 518, 64 L.Ed. 935. The fact that the United States Government furnished the funds, from which the contractors were paid, created no liability on the United States. One who lends or gives money to another to carry out a contract does not become liable to an action by a third person for material furnished or work done pursuant to said contract. Grand Prairie Gravel Co. v. Trinity Portland Cement Co., 5 Cir., 295 F. 140.

The United States Government's necessity for having said road available as a means of access to one of its defense plants did not create any liability on the Government for the damage plaintiff here claims. Under the scheme by which the United States Government is shown to have participated in question, it is apparent that the United States Government was only seeking a "means" whereby commerce and defense workers could reach one of its defense plants. The United States Government did not, as a primary obligation, undertake to establish such "means." The road which was established, widened and extended, that provided such "means" belonged to the State of Missouri. State ex rel. McWilliams, Pros. Atty., v. Little River Drainage District et al., 269 Mo. 444, 190 S.W. 897. The Highway Commission of said state prepared the plans and specifications for the project in question and undertook the direct work of constructing said road. Under such circumstances it cannot be contended that any damage resulted to plaintiff by reason of any act or thing that was done, by any person in the work of constructing said road who had a contract with, or acted on behalf of the United States. No Act of Congress authorized any branch of the United States Government to undertake the actual work of constructing the road in question, under the circumstances here adduced.

It cannot be contended that the damage done to plaintiff's pipeline was "incident to the condemnation" proceedings instituted by the United States Government, as above referred to. The Court having jurisdiction of said proceedings found that plaintiff had no claim against the United States for any property of plaintiff "taken" by reason of the right of eminent domain there asserted. The decision so made by said Court is res adjudicata and precludes any assertion of such a claim being made in this proceeding.

In view of the foregoing it is not necessary for the Court to adjudicate other issues raised in the pleadings and by the evidence. From what has been said it is apparent that plaintiff has no right to sue the United States upon a contract, express or implied in fact, under the circumstances revealed in this action. Therefore this Court does not have jurisdiction under T. 28 U.S. C.A. § 41(20) to entertain the cause of action plaintiff here asserts against the United States.

Wherefore plaintiff's petition should be, and the same is, hereby ordered dismissed.

### Finding of Fact

The Court finds the fact to be that the damage done to plaintiff's pipeline was occasioned by the act of doing the work of constructing the project in question; that such construction work was performed by the Highway Commission of Missouri.

### Conclusion of Law

The Court declares the law to be that plaintiff's right to sue the United States must rest upon a contract, express or implied, in fact. That no such contract is established by the facts here involved.

Plaintiff's petition should be dismissed for want of jurisdiction in this Court to entertain the claim therein asserted by plaintiff against the United States.